## LELIA L. HAYES et al., Appellants, v. KANSAS CITY, THOMAS PHILLIPS et al.

### Division Two, June 19, 1922.

1. **STREET: Remote Territory Outside of City: Dedication.** The attempted dedication of a street in an addition lying wholly outside of a city, with another municipality and two miles of territory intervening between it an the corporate limits, by the filing by the owner and the recording of a plat of such addition, on which said street is outlined as a part thereof, and the acceptance of said street by the city, are invalid. The city has no jurisdiction or right to embrace within its corporate limits a territory so remote, and no private person can establish a public highway over his property without the consent of the public, and the city had no power to accept such attempted dedication.

2. ———: ———: ———: **County as Trustee for City: Statute: Application.** The statute (Sec. 6573, R. S. 1879) declaring that "if such city, town or village shall not be incorporated, then the fee of such lands conveyed, as aforesaid, shall be vested in the proper county in like trust, for the uses and purposes aforesaid, and none other" had no application to an incorporated city; and hence the

county, in which such incorporated city was located, did not, by
the use of words on the recorded plat of an addition situated two
miles from the city limits, that " the streets and avenues as repre-
sented on this plat are hereby dedicated to public use," become
vested with the fee to the streets for the uses of the city. The
statute applies when there is no municipal entity to accept the
attempted dedication, but it does not apply when the attempted
dedication was to a named incorporated city; and the county had
no more power to accept a dedication in such case than the
city had to accept an attempted dedication of streets and avenues
situate far remotely from its corporate limits.

3. ———: ———: ———: No Acceptance: Subsequent Use. Where an
incorporated city had no power to accept an attempted dedication
of certain streets and avenues described on a plat recorded by the
private owner, he has the right to resume his dominion over
them, and to recall or revoke his proposed dedication.

4. ———: ———: ———: Public Road: Established by Individual.
Under the then statutes county courts in 1887 possessed the ex-
clusive power to establish new county roads, and they could ac-
quire jurisdiction to do so only upon the petition of householders,
and no individual had the right, acting alone, to establish them.

5. ———: ———: Common Law Dedication: Revocation. A common-
law dedication of a tract of land as a street to a city is a con-
tinuous, irrevocable offer to dedicate, which the dedicator cannot
retract, but which does not become a street until the properly con-
stituted authorities do some act showing acceptance thereof. And
where the dedicator, in an attempt to create an addition to an
incorporated city, two miles from its corporate limits, by record-
ing a plat of such addition, on which he declared that "the streets
and avenues as represented on this plat are hereby dedicated to
public use," but totally failed to create such addition, and the
city authorities having done nothing showing acceptance thereof
he resumed dominion over the streets and he and those under him
continued to use it in such a way as to negative a continuous
offer to dedicate, there was no common-law dedication; and the
city cannot now, against the consent of the present owners, take
possession of the supposed streets without exercising its power of
eminent domain.

6. ———: ———: ———: ———: Trial Theory: Binding on Appeal.
The defendant city, having tried the case on the theory that there
was a valid statutory dedication of the street of which it proposes
to take possession, is bound by that theory on plaintiffs' appeal
from a judgment for defendant in their suit to enjoin the city

Hayes v. Kansas City.

from taking possession, and cannot sustain said judgment on the unpleaded theory that there was a common law dedication.

7. ———: ———: ———: ———: **Subsequent Extension: Use of Plat: Estoppel: Acts of Others.**   The attempted dedication of streets through an addition two miles from the corporate limits of an incorporated city, by the filing and recording of a plat of the addition of which said streets were a part, being a nullity, because the city on account of the remoteness of the addition had no jurisdiction to accept the streets, an extension ten years later of the corporate limits so as to embrace said addition, and subsequent transfers of many lots and blocks by reference to the plat by other parties than plaintiffs, and the grading and pavement by the city of many of the streets outlined on the plat, may be urged as sufficient to vest the streets affected thereby in the city; but necessarily during those ten years all references to the plat in the transfers were for descriptive purposes, and since before the expiration of those ten years the owner of the street in question inclosed it, thereby as to such street revoking the dedication, and they and the subsequent owners under them have since continuously used it exclusively for their own private purposes, and have never evinced a purpose to dedicate any part of it to street uses and it is segregated from the rest of the addition, said acts of the city and such other persons do not estop the present owners to deny the dominion of the city over said street or to deny that it has ever been dedicated to public use.   The plat being a nullity as a dedication, the owners of lots in the addition were not affected thereby unless they elected, after the city had extended its limits to embrace the same, to initiate the processes of a common law dedication, and such initiation by owners of some of the lots could not bind non-consenting and unwilling owners of others.

8. ———: ———: ———: ———: **Transfers: Payment of Taxes: According to Plat.**   Nor does the fact that after the city limits were extended to embrace the addition the owners of the supposed street in suit used the descriptions in the recorded plat thereof in the sale and transfer of lots in the addition and in the payment of city and other taxes, estop them to deny that they thereby after said extension initiated a common-law dedication of the street described thereon which they inclosed before said extension was made and have ever since used for different purposes, for such use of the plat is to be considered as a method of describing the properties.

9. ———: ———: ———: **Manner of Use.**   In a suit to enjoin an incorporated city from taking possession of a supposed street on
294 Mo.—43

the ground that it has never been dedicated to public use, evidence of the manner in which plaintiffs have used it for private purposes is beyond the issues and irrelevant.

Appeal from Jackson Circuit Court.—*Hon. Daniel E. Bird,* Judge.

REVERSED AND REMANDED.

*Hardin B. Manard, Frank P. Walsh* and *James P. Aylward* for appellants.

(1)   The court erred in finding and decreeing that the alleged Baltimore Avenue was, and still is, a public street in Kansas City, and that appellants have no rights in the same, except such as are subject to the easement of the public.  (a) Because said alleged street was never condemned as such, used as such, or dedicated to public use as a street.   Laws 1875, p. 196, sec. 2; 28 Cyc. 605; St. Louis v. St. Louis University, 88 Mo. 155.  (b)  Because Kansas Cty had no jurisdiction or authority to accept a dedication thereof, or to control, improve or maintain said alleged street, and the attempted dedication thereof was invalid.   St. Louis v. St. Louis University, supra; Dillon on Municipal Corporations (5 Ed.), sec. 980; Riley v. City of Rochester, 9 N. Y. 64; Gibson v. Village of Massena, 178 N. Y. Supp. 851; Forsythe v. Hammond, 142 Ind. 505, 522; Jackson v. Cory, 8 Johns, (N. Y.). 385, 388; Vaughn v. Village of Greencastle, 104 Mo. App. 210; Stealey v. Kansas City, 179 Mo. 400; Sec. 6570, R. S. 1879, and amendment Laws 1887, p. 227; Sec. 9284, R. S. 1919; 13 Cyc. 458, 459, 461; 18 C. J. 72; 13 Cyc. 475; 18 C. J. 67.  (c)  Because at the time of the attempted platting and dedication, said alleged street was outside the territorial limits of said city and not contiguous thereto.  (d) Because the town of Westport was at said time between the said property and the limits of said city.  (e) Because the plat of Bismark Place, whereby said street was attempted to be dedicated was never approved by ordinance  of  the  Common  Council  of

Kansas City. (f) Because said alleged street was never a public street, highway or roadway of any kind, and even if it was ever such, it was a county highway or road, and was abandoned as such by Jackson County, long prior to the incorporation of said street within the there-after extended limits of Kansas City. Sec. 7847, R. S. 1889; Sec. 10446, R. S. 1909; Payne v. Road Improvement District, 216 S. W. 1046; Sec. 9283, R. S. 1919. (2) There never was any dedication to Jackson County. Granite Bituminous Pav. Co. v. McMann, 144 Mo. App. 609. (a) The county was not named as grantee, and (b) the county was not a corporation or a natural person. Dillon on Municipal Corporations (5 Ed.) sec. 1070. (b) Jackson County could not hold said property as trustee for Kansas City. Sec. 9287, R. S. 1919. (3) There was no dedication by user or common law. Carpenter v. St. Joseph, 263 Mo. 715; State v. DeVall, 157 Mo. App. 587. (4) If Baltimore Avenue ever was dedicated as a county highway, it was abandoned by the county and reverted to the owners of the lots abutting on its alleged way. Sec. 7847, R. S. 1889; Sec. 10446, R. S. 1909; Johnson v. Rasmus, 237 Mo. 586, 590 to 594; State v. DeVall, 157 Mo. App. 588; St. Joseph v. Terminal Ry. Co., 268 Mo. 47, 59; Campbell v. City , 102 Mo. 345; City v. Smith, 238 Mo. 328, 336; Excelsior Brick Co. v. Village Haverstraw, 142 N. Y. 146; Ansby v. Hinde, 48 N. Y. 57; 28 Cyc. 834. (5) Kansas City could acquire no greater title than Jackson County had. Duckworth v. Springfield, 184 S. W. 476. (6) The court erred in admitting over the objection of the appellants evidence relative to the method of operation of appellants' business on said premises, as said evidence did not constitute any defense to said proceeding. Smith v. Sedalia, 152 Mo. 283, 301; State v. Springfield Gas & Electric Company, 204 S. W. 944; 29 Cyc. 1152. (7) The decree of the trial court is in violation of Sections 4, 20, 21 and 30, of Article II, Mo. Constitution. Barber Asphalt Paving Co. v. Ridge, 169 Mo. 384; Holmes v Kansas City, 209 Mo. 513; Rourke v. Holmes Street Ry. Co., 221 Mo. 46; Gorman v. Railroad,

255 Mo. 483; Carpenter v. St. Joseph, 263 Mo. 718; City of St. Louis v. Railway, 211 S. W. 672; St. Louis v. Brenner, 223, S. W. 108.

*E. E. Aleshire* and *Edwin C. Meservey* for respondents.

(1) The dedication of the land in controversy to the public was valid. Sec. 6559, R. S. 1879; Laws 1887, p. 228; R. S. 1879, sec. 6573. From Section 6573 above it will appear that the title in fee to the real estate in controversy, for the use of the public, was vested in Jackson County, because the land in controversy was at that time outside of the limits of Kansas City. Town of Cameron v. Stephenson, 69 Mo. 378. (2) A valid statutory dedication operates to vest the fee and dispenses with the necessity of an acceptance on the part of the public. Laddonia v. Day, 265 Mo. 390; Otterville v. Bente, 240 Mo. 291; Hill v. Hopson, 150 Mo. App. 611; Reid v. Board of Education, 73 Mo. 295. When the plat is executed and filed the title vests in the county by operation of the statute, and not by any act of the trustee or other state agency. Robinson v. Korns, 250 Mo. 672. (3) When the owner files a plat subdividing his property into blocks and lots and showing on its face streets or avenues, and sells and conveys the lots abutting on the streets, he thereby dedicates to the public the streets so laid out by him. Buschmann v. City of St. Louis, 121 Mo. 523; Otterville v. Bente, 240 Mo. 296. (4) Upon the extension of the limits of Kansas City so as to include Bismark Place, in 1897, the street became vested in Kansas City, to the same extent as if the addition when platted had been within the city limits, and this is true even if there is an irregularity in the dedication. Clay Products Co. v. St. Louis, 246 Mo. 460; Wright v. Doniphan, 169 Mo. 601; Glasgow v. City of St. Louis, 15 Mo. App. 112. (5) The fact that the small portion of Baltimore Avenue in controversy was not used as a public street for a period from July 15, 1887, the date of filing of the plat for record, to

December 2, 1897, when the city limits were extended so
as to take in the property in controversy, did not divest
the public of its right in the street. R. S. 1919, sec. 1314.
The authorities are overwhelming in Missouri that this
section applies to all streets dedicated to public use,
either within or without the city limits of an incorpo-
rated city, and that non-user or actual adverse posses-
sion will not deprive the public of their rights in the
street, unless such non-user occurred ten years prior to
August 1, 1866. Marshall v. Springfield, 221 S. W. 17;
Hatton v. St. Louis, 264 Mo. 634; City of Caruthersville
v. Huffman, 262 Mo. 367; Dudley v. Clark, 255 Mo. 585;
Hafner Mfg. Co. v. St. Louis, 262 Mo. 644; Columbia v.
Bright, 179 Mo. 441; Brown v. City of Carthage, 128 Mo.
17; Robinson v. Korns, 250 Mo. 663, 672; Clay Products
Co. v. St. Louis, 246 Mo. 346; Wright v. City of Doni-
phan, 169 Mo. 601. From a reading of these cases it will
be observed that the statute is not intended to give relief
to Kansas City or to Jackson County, but that it is a
statute providing that no statute of limitations shall run
against the public. (6) The acceptance by appellants of
the deed to the lots fronting on Baltimore Avenue be-
tween Ward Parkway and 49th Street estopped them
from denying the existence of Baltimore Avenue as a
public street. Heitz v. City of St. Louis, 110 Mo. 618;
Caruthersville, v. Huffman, 262 Mo. 367; Laddonia v.
Day, 265 Mo. 383. (2) The improvements of one street
in an addition is sufficient acceptance. Heitz v. St. Louis,
110 Mo. 618; Otterville v. Bente, 240 Mo. 291; Caruthers-
ville v. Huffman, 262 Mo. 367. (8) Sec. 7847, R. S. 1889,
providing that non-user by the public for the period of
ten years continuously of any public road, shall be
deemed an abandonment of the same, does not apply. It
is only applied to public roads existing or which have
existed, and not to the title of lands voluntarily conveyed
in trust to be thereafter used for the purpose of
establishing streets thereon as they should be needed.
State v. Muir, 136 Mo. App. 118; State ex rel. v. Busse,
153 Mo. App. 446; Bobb v. St. Louis, 276 Mo. 59; Robin-

son v. Korns, 250 Mo. 663; Clay Products Co. v. St. Louis, 246 Mo. 446; City of Columbia v. Bright 179 Mo. 441; Hendrickson v. Grable, 157 Mo. 42; Williams v. St. Louis, 120 Mo. 403.

REEVES, C.—Plaintiffs (appellants) on January 19, 1920, filed their petition in the Circuit Court of Jackson County for an injunction against defendant city and its agents (respondents) to restrain said city from interfering with their private use of certain alleged portion of Baltimore Avenue in said city. A temporary restraining order was made, but upon final hearing same was dissolved and plaintiffs' bill dismissed. However, upon motion of plaintiffs, pending further proceedings, including the appeal to this court, the restraining order was re-entered and continued in force.

The petition alleged that the plaintiffs were citizens and residents of Kansas City and were the owners in fee simple of certain lots in Block D and C in Bismark Place, in Kansas City, and that they had owned the same, "together with all the real estate and appurtenances abutting thereon, for a period of more than thirty years, under certain warranty deeds and conveyances from persons owning said property, and have occupied the same and had the full, complete, continuous and uninterrupted possession thereof under said deeds and claims of ownership for and during all of said period of time; that all of said plaintiffs are and were at the times mentioned herein the officers, directors and owners of all of the capital stock of the Lyle Rock Company, and that the said plaintiff, the Lyle Rock Company, is a corporation duly organized and existing under and by virtue of the Constitution and laws of the State of Missouri, and during the last thirteen years has been the tenant, occupant, and in possession of the above described real estate by and with the consent of the other plaintiffs herein, and during said time has been engaged in the manufacture of brick and the quarrying of rock for sale and distribution; that immediately after becoming the tenant and occupant of said

real estate, the said Lyle Rock Company, at great and considerable expense, and the expenditure of many thousands of dollars, built, constructed, erected and placed upon said real estate brick kilns, buildings, rock crushers, machinery and other equipment and appliances necessary to the proper operation of said business, and during all of said time the plaintiffs herein have enjoyed the exclusive and peaceable possession of said premises.''

It was then averred that the defendant through its City Engineer and its members of the Board of Public Works and Superintendent of Streets ''are now threatening to go upon said premises and for the purposes of wrongfully and willfully removing therefrom all of said buildings, personal property, machinery and equipment owned by the plaintiffs herein, and have and now are attempting to unlawfully and forcibly occupy said premises, without having any right, title or interest therein, either in law, or in equity, to said property herein described, nor have they any right to the possession thereof.''

Plaintiffs further averred that they had built up a large and lucrative business upon said premises and that such threatened interference by the city and its agents, if carried out, would injure and wholly destroy said business.

After alleging that they were ''in full, open, obvious, complete, continuous, uninterrupted enjoyment and adverse possession of'' said premises ''under claim of right and intermediate conveyances from persons owning and holding the same prior to the granting and conveying of said property to the plaintiffs herein,'' they allege ''that in July, 1887, there was platted the aforesaid city addition, known as Bismark Place, wherein were contained the lots before designated, and . . . there was platted a pretended avenue, designated upon said plat as Baltimore Avenue; that from said time to the present time no part of said designated pretended avenue was ever used for public travel, nor was there ever any money expended upon the same for the purpose of con-

verting it into an actual and used county road, or city street; that plaintiffs and their grantors have used, ever since the aforesaid platting, and are now using said ground in connection with said lots, and the aforesaid buildings and improvements are in part thereupon and have been for a period of thirteen consecutive years, and that the same were all built, erected and constructed by and with the knowledge, consent, approval, and acquiescence of the defendants, and each of them, and their predecessors in office, and they are now forever estopped to deny the ownership of these plaintiffs, or to forcibly and unlawfully interfere with their quiet enjoyment thereof. . . . That during all of the time of the ownership . '. . for a period of more than thirty years, said pretended avenue, as platted, has never been used for public purposes, and on account of the irregular, uneven and precipitous condition and location of said lots and real estate, the same is and has been during all of said time absolutely impracticable for any such use.''

It was further alleged that all of said property ''was located beyond the corporate limits of Kansas City, Missouri, and the pretended dedication of said avenue and highway to Kansas City and the acceptance thereof at said time, in the year 1887,'' was unlawful and beyond the charter power and authority of said city, and that it so remained without the corporate limits of said city for a period of more than ten years thereafter, and that said attempted dedication being null and void, and plaintiffs and those under whom they claimed having been in adverse possession of said property, they now enjoyed the right to an uninterrupted possession.

Defendants answered, denying ownership in plaintiffs of said property or that they were about unlawfully to enter said premises without authority, but asserted that said property was included in Bismark Place, an addition regularly platted in July, 1887, and accepted by said city, and that on the plat filed there was designated a street or avenue called Baltimore Avenue. Defendants admitted plaintiffs were occupying said alleged street,

but denied that they had occupied same for the period specified in their petition, and denied that the dedication of said street and the acceptance thereof in 1887 were null and void. Defendants allege ''that in July, 1887, the then owner of the land, now known as Bismark Place, duly platted said land into an addition designated Bismark Place, which said plat was duly acknowledged and filed for record in the Recorder's Office in Jackson County, Missouri; that in and by said plat said owner dedicated to public use as a street Baltimore Avenue and other streets in said addition.'' That subsequently Kansas City extended its limits so as to embrace said land, which was in 1897 graded, and paved, and otherwise improved various of the streets in said addition, including part of said Baltimore Avenue.

''And defendants aver that plaintiffs have encroached upon and are now occupying and using said. street or avenue without lawful right so to do, and the use they make thereof constitutes a nuisance.''

Upon a trial, plaintiffs sustained the allegations of their petition with respect to their ownership of certain lots and blocks and their occupation and use thereof in Bismark Place; that ''Bismark Place'' was not contiguous to Kansas City at the time it was platted; that it was situated a great distance south of said city, and that the city of Westport, a separate municipality, intervened between said addition and Kansas City, and that said Bismark Place was a considerable distance south of Westport.

It was shown that said property had never been used for urban purposes, but for many years after the filing of said plat was enclosed and used for agricultural and dairy purposes, and that the particular property involved in this litigation was rough and uneven and impractical for the use of any portion thereof as a street or highway, and that plaintiffs had constructed valuable properties upon a portion of Baltimore Avenue, as marked on the plat of said Bismark Place. It was ad-

mitted that the city, through its agents, were about to re-
move plaintiffs and their property from said alleged
street and would have done so but for the restraint im-
posed by the injunction suit.

Respondents' testimony, over the objection of ap-
pellants, tended to show that smoke, fumes and gases,
issuing from the brick kilns of plaintiffs, maintained
and operated on said property, constituted a great an-
noyance to residents in the vicinity, and that the blasting
of rocks in the stone quarry, situated thereon, was a
constant source of annoyance and peril. It appeared
without controversy that in 1897 the city limits of Kan-
sas City had extended southwardly to said property and
that thereafter had been extended to a point considerably
beyond, so that at the time of this suit all of said prop-
erty was within the corporate limits of said city.

Appellants urge here the invalidity of the dedica-
tion of Baltimore Avenue in said Bismark Place, and
that the decree of the trial court violated certain pro-
visions of our fundamental law, because denying to cit-
izens the equal protection of the law and taking prop-
erty without compensation. Respondents in turn urge
the validity of said dedication, and the issue is sharply
drawn on that question.

I. The contention, made by appellants, that the
dedication of said Baltimore Avenue in Bismark Place
and the acceptance thereof by the city are invalid, must
be sustained. It was undisputed that when Bismark
Place was platted in 1887 it was separated from Kansas

*Dedication:
Remote
Territory.*
City by a distance of approximately two
miles, with Westport, an independent
municipality, intervening. It is not con-
tended by respondents that the city had any
jurisdiction or right to embrace within its corporate
limits a territory so remote. Without jurisdiction it
could not accept a dedication of the streets and alleys
of the so-called Bismark Place, and no private person

can establish a public highway over his property with-out the consent of the public. [Downend v. Kansas City, 156 Mo. 60, 56 S. W. 902.] Conceding that the owner possessed the power to dedicate, the public (the city) was wholly without power to accept, and in consequence the attempted dedication and attempted acceptance were as ineffective as if the proposal had never been made and the plat had not been filed. [City of St. Louis v. St. Louis University, 88 Mo. 155; 18 C. J. 72.]

II.    It is urged by respondents that although the city was unable to accept such dedication, yet by the general words used by the dedicator—"The streets and avenues as represented on this plat are hereby dedicated to public use"—the County of Jackson became vested with the fee for the uses and purposes therein mentioned. In support of this contention, we are cited to a portion of Section 6573, Revised Statutes 1879, to the effect that "if such city, town or village shall not be incorporated, then the fee of such lands conveyed, as aforesaid, shall be vested in the proper county in like trust, and for the uses and purposes aforesaid, and none other."

County as Trustee.

This provision is not applicable to the facts under consideration. Kansas City was an incorporated city, and the attempt was made to create an addition to said city. It was not an effort to create a new town or city, but to create an addition to an incorporated city, and either the dedicators could dedicate to said city or they could not, and their efforts so to dedicate to the city, if defeated, could not serve to dedicate the same streets to the county. In other words, the statute cited undertook to vest title to the streets in the county when there was no municipal entity to accept. The dedication in this case, being null and void, Jackson County, representing the public, was not authorized to accept a dedication proposed to another municipal entity. There being no acceptance of the dedication, the owner of said property had the right to resume his dominion over same as

against the public, and thus revoke or recall his proposed dedication. [City of St. Louis v. St. Louis University, 88 Mo. l. c. 159.]

The testimony was overwhelming that such course had been pursued and that the particular property in question had been enclosed and used for other purposes continuously since the attempted dedication.

III. In view of the above, it is not necessary to discuss the questions raised in the briefs of the parties with respect to the rights of Jackson County in such street. However, we may say that at the date of this attempted dedication, the county courts possessed the exclusive power to establish new county roads and they could only acquire jurisdiction to do so upon the petition of a specific number of householders. It was shown that the county court had never acted with respect to the street in controversy, and no individual citizen has the right, acting alone, to establish a public highway. [Foster v. Dunklin, 44 Mo. 216; Snoddy v. Pettis County, 45 Mo. 361; Zeibold v. Foster, 118 Mo. 349, l. c. 354; State ex rel. Mermod v. Heege, 39 Mo. App. 49.]

IV. Although respondents in their answer relied upon the validity of the dedication made in the plat of Bismark Place, yet they urge in effect that there was a common-law dedication. We cannot agree to this contention. "A common-law dedication is a continous irrevocable offer to dedicate, which the dedicator cannot retract, but which does not become a street until the properly constituted authorities do some act showing acceptance thereof." [Downend v. Kansas City, 156 Mo. 60.] In this case there was no common-law dedication. The dedicator attempted a statutory dedication and completely failed and thereafter resumed dominion over his property, and both himself and those under him used it in such way as to negative any thought of a continuous offer to dedicate. It is true that the plat was on file,

Common-Law Dedication.

both with the city of Kansas City and with the Recorder of Deeds, yet this was in connection with his. effort to create an addition to Kansas City and for no other purpose. His offer therefore was to dedicate the streets in question as an addition to Kansas City, and it was not an offer to dedicate streets to be used for other purposes than as an addition to said city. It would be idle to say that his offer to dedicate to Kansas City, when rejected by the law, must stand as a continuing offer irrevocable by him, either in favor of Jackson County, to which he never made the offer, or to Kansas City when in the course of years it might qualify to accept said offer. Thus to hold would be to say that a *void* proposal or offer to dedicate without any further action on the part of the dedicator would stand irrevocable as against him and become a valid proposal, when some municipal entity in the course of years might qualify to accept it.

In the case at bar there was no such indefinite and vague proposal made, but on the contrary it was à very definite offer and so treated by all of the parties hereto in making up the issues in this case and in the trial. Respondents tried this case upon the theory that there was a valid statutory dedication, and the same theory must be followed here. [Railroad v. Lydik, 187 S. W. (Mo.) 891.]

V. Respondents showed conclusively that many transfers of lots and blocks, within Bismark Place, had been made with reference to the plat thereof by parties other than appellants, and that the city, after having embraced such platted addition within its corporate limits, had graded, paved and otherwise improved many of the streets therein, and they urge that this was sufficient to vest all of said streets marked on said plat in Kansas City. This is doubtless true as to portions of Bismark Place, but such dedication did not arise from the original effort made by the proposed dedicator; that effort was a nullity, and if the city acquired any rights to the streets marked on said plat, such rights

Estoppel.

inevitably arose from the conduct of the parties. It is familiar doctrine that in order to constitute a street or alley in a municipal corporation, it is not always necessary to pursue the statutory course. [Heitz v. St. Louis, 110 Mo. 618.] Admittedly the city did not extend its boundaries to Bismark Place for more than ten years after the attempted statutory dedication. During those years the plat filed was a nullity for all urban purposes, and all reference thereto in the transfers of property were necessarily for descriptive purposes, and not in reliance upon the streets and avenues marked thereon. If, when the city embraced Bismark Place, there were those property owners therein who then elected to treat such streets and avenues so far as their property was affected thereby as dedicated to the city, and if the city elected to treat such streets and alleys as accepted, then undoubtedly the property owner and the city enjoyed the right to dedication and acceptance in so far as individual properties were concerned, but those property owners who did not thus offer such streets and alleys, affecting their property to the city for its acceptance, the same could not be taken without their consent or without compensation. If the original plat had been merely defective and insufficient under the statute, then a different question might arise, but the original plat was a nullity, and being a nullity the property owners were not affected thereby, unless, as stated, they elected, after the city had extended its limits, to initiate the processes of a common-law dedication, and in that event such property owners could not by their act bind non-consenting or unwilling property owners. The case of Otterville v. Bente, 240 Mo. 291, l. c. 296, does not aid respondents, as the plat filed in that case was merely defective and insufficient under the statute, but notwithstanding such defect and insufficiency lots were sold, the town grew chiefly in that addition and on lots laid out along the streets therein and the town accepted most of the streets in their entirety. The dedicators had done a lawful thing imperfectly.

In the case at bar the original plat of the addition was a nullity. The dedicator had tried to do an unlawful thing, and a period of ten years elapsed before respondent city extended its limits so as to embrace the property in suit. It could not at that time by its act vitalize a void act so as to affect the property owners in said Bismark Place without their consent. Nor does the case of Buschmann v. St. Louis, 121 Mo. 523, aid respond-. ents, for in that case the plat in question covered land within the corporate limits of the city, and moreover in that case there was a statutory dedication, but defective because not expressly accepted by the city.

The case of Caruthersville v. Huffman, 262 Mo. 367, relied on by respondents, upheld the validity of a defective acceptance of a legal dedication by applying common-law doctrine.

We have carefully examined all of the authorities cited by respondents, and find that in each and every case the plat was merely defective and not void. For instance in the case of Hatton v. St. Louis, 264 Mo. 634, the plat was not acknowledged, though recorded as required by law, and the court held that it was just as efficacious as a statutory dedication, because the doctrine of common-law dedication applied.

In this case no purchaser was deceived, as the street in controversy was never open. The testimony was that said street, as marked on the plat, lay across a deep ravine, with water flowing therein and with high cliffs of bluffs on the opposite side, and that the land covered by said street has always been wholly impracticable for urban purposes. Even if pleaded, we fail to find where estoppel would apply.

Persons acquiring property in Bismark Place acquired. no rights in respect to a passage way over and along said theoretical street at the particular point in controversy. It was not a servient property, and the plat, as stated, being wholly void, its only possible use was for descriptive purposes. The case of· Milling Co. v.

Riley, 133 Mo. 574, is the nearest approach to questions involved here, but estoppel and user were the turning points in that case. See also Drimmel v. Kansas City, 180 Mo. App. 339.

VI. Respondents did not plead estoppel in their answer, but they urge here that appellants, having accepted deeds to said property under the descriptions contained in the plat, and having paid taxes by the same description, are and should be estopped to

**Descriptive Uses: Paying Taxes.** assert that Baltimore Avenue in Bismark Place is not a public street of the city. Appellants did not sell any of said property with reference to said void plat.

As hereinbefore stated, such transfers by reference to that plat were for description only, and not in reliance upon the dedication of the streets marked thereon, as that was a nullity, and subsequent use of said plat by the city and property owners, so as to accomplish a common-law dedication and acceptance, would not be binding upon appellants, and this is true even though appellants continued to use the descriptions ·contained in the plats and paid taxes thereon by such description. [Boatmen's Bank v. Semple Place Realty Co., 213 S. W. 900; Paving Co. v. McManus, 244 Mo. 184, 148 S. W. 621.]

VII. It is obvious that if the city acquired any rights in the streets of Bismark Place, such rights were acquired by common-law dedication and acceptance after the city had extended its limits so as to embrace said addition, and such rights were limited to the property

**Manner of Use.** owners electing to dedicate, and would not include appellants who were using their portion of said addition exclusively for their own private purposes, and neither evinced a purpose thus to dedicate any portion thereof, nor did they withdraw from any other property owner in said addition any privileges acquired by them with respect to the property in suit,

as such property of appellants was at all times impassable.

Much testimony was offered by respondents with respect to the manner in which appellants were using said property for private purposes. This is not a proceeding to regulate the manner of using said property, but a proceeding wherein respondents assert that Baltimore Avenue at said point is a public street and that appellants are improperly obstructing it. Such testimony was beyond the issues, and wholly irrelevant and should have been excluded upon the timely objection of appellants' counsel.

The premises considered, we must hold that appellants were within their rights in using the property in question, and that respondents should have been perpetually enjoined from interference therewith. It follows that the judgment must be reversed, and the cause remanded with directions to the court below to enter up judgment perpetually restraining respondents from further interference with the lawful use of said property by appellants.

It is so ordered. *Railey* and *White, CC.,* concur.

PER CURIAM:—The foregoing opinion by Reeves, C., is adopted as the opinion of the court. All of the judges concur.